

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXWENLXWILSONXXXXXXX
ATTORNEY GENERAL

Overruled by~~WW 188~~

January 13, 1939

Honorable John W. Pritchett
Member Board of Water Engineers
Austin, Texas

Dear Mr. Pritchett:

Opinion No. 78
Re: Public waters

Your letter of January 9, 1939, addressed to Honorable Gerald
C. Mann, Attorney General, asking for an opinion on what fees,
if any, the Board of Water Engineers can charge the State Parks
Board, has been received.

Part of your letter is as follows:

> "The Texas State Parks Board, in order to comply with the
> statutes relative to the impounding and use of the public
> waters of this state and to establish its rights relative
> thereto, has filed an application with this board for a
> permit to construct a dam on the Navasota River and to im-
> pound and appropriate certain public water.
>
> "The statutes provide, as in Article 7532a, Revised Civil
> Statutes, as carried forward in Vernon's revision of Volume
> 21, that this board shall charge and collect certain fees
> before filing and considering an application for a permit to
> appropriate public waters.
>
> "This Board is in doubt as to whether or not it should col-
> lect the usual filing fee from the Texas State Parks Board
> and requests your advice in the matter."

In your letter you refer to the fact that this Department has
previously rendered opinions on questions similar to this. No
Texas appellate court, as far as we can ascertain, has acted
on this question; and we feel that the opinions heretofore ren-
dered by this department on this question were sound, and we
will be governed thereby.

On June 30, 1925, in an opinion written by Mr. C. L. Stone to
Mr. Turner E. Hubby, Game, Fish & Oyster Commission, this depart-
ment held:

"...the Game, Fish & Oyster Commission would not be re-
quired to pay to the Board of Water Engineers a fee for
filing his application for such water under the requirements
of the statute."

On March 8, 1938, in an opinion written by Mr. H. L. Williford
to Mr. John D. McCall, General Counsel for the Brazos River Con-
servation & Reclamation District, this department said:

"You further comment upon the fact that the revenues col-
lected by the Board of Water Engineers under Article 7533
are deposited in the State Treasury, to the credit of the
general revenue fund.  Likewise under the provisions
of the most recent Act of the Legislature directly affect-
ing the Brazos River Conservation and Reclamation District
(Chapter 368, Acts of the First Called Session of the
Forty-Fourth Legislature) any profits made ultimately by
the district are to be paid into the general revenue fund
in the Treasury of the State of Texas.

"I am of the opinion the fees required under Article 3572,
Revised Civil Statutes of Texas, 1925, are not required of
the Brazos River Conservation and Reclamation District, and
you are so advised.

These last two quoted opinions indicate an answer to this ques-
tion, but before relying on them, we must consider an opinion
written by Mr. Eugene Tate to Mr. A. H. Dunlap, Member Board of
Water Engineers, on May 13, 1938, in which this department held
that the Board of Water Engineers should charge the Upper Red
River Flood Control and Irrigation District the usual filing
fees, and said:

"...the opinion of March 8, 1938, written by Mr. H. L.
Williford and addressed to John D. McCall presents a dif-
ferent situation from the one outlined in your inquiry.
The conclusion reached by Mr. Williford in this opinion was
predicated on the fact that Section 6, of Article 819f pro-
vides in substance that the net revenue derived from the
operation of the Brazos River Conservation and Reclamation
District shall be paid into the general fund of the State
of Texas.  This provision, it appears to the writer, in
effect places the Brazos River District in the same catagory
with the project of the Game, Fish and Oyster Commission
referred to in Mr. Stone's opinion of June 30, 1925.

"There being no provision in the special act of the legis-
lature which created the Upper Red River Flood Control and
Irrigation District which allocates the net revenue derived
from the operation of said district to any state fund, it

is the opinion of the writer that this district is liable
for the statutory fees provided in Article 7532 Revised
Civil Statutes, and that required in Article 7497."

We do not think that this opinion is in conflict with the first
two opinions from which we quote above.  This last opinion,
written by Mr. Eugene Tate, indicates that it required the govern-
mental agency in question to pay the fees because its revenues
did not go into and come out of a State fund, whereas, the govern-
mental agencies involved in the other two opinions quoted were
such that their revenues did go into and come out of a State fund.
We think that this is a reasonable distinction, and that we
should follow it.

The State Parks Board is created by the terms of Article 6067 of
the Revised Civil Statutes of Texas, which provides for a board
of six members who "shall serve without compensation."  However,
a provision is made with reference to revenues in Article 6070a,
which provides in part as follows:

> "Sec. 1.  The State Park Board is hereby authorized to
> grant concessions in State Parks and to make concession con-
> tracts for any causeway, beach drive or other improvements
> in connection with State Parks sites, wherever feasible.
> The revenue thus earned by the State Parks Board shall, when
> collected be placed in the State Treasury....

> "Sec. 2.  The funds and revenue dreived under the provisions
> of this Act and deposited in the State Treasury shall be
> deposited in a Special Fund to be known as the 'State Parks
> Fund', and the State Treasurer is hereby authorized and
> directed to designate such Fund accordingly and carry on his
> records a separate account therefoe; and not exceeding One
> Thousand ($1,000.00) Dollars per year is hereby appropriated
> by the Legislature of Texas out of said Fund for the payment
> of the traveling and contingent expenses of the members of
> the State Parks Board which have been necessarily incurred
> in the performance of their duties."

We think that this clearly shows that the revenues of the State
Parks Board go into and come out of a State fund; and therefore
it falls in the class of the governmental agencies referred to
in the first two opinions quoted as far as charging fees are con-
cerned.

We adhere to the former opinions of this Department, quoted above,
and hold that the Board of Water Engineers should not collect the
usual filing fees from the State Parks Board with reference to
the building of dams and the impounding of water.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      Carl C. Rotsch
        Assistant

CCR:N

APPROVED

        GERALD C. MANN

ATTORNEY GENERAL OF TEXAS